LAW OFFICES OF
# Murray Richman
2027 Williamsbridge Rd. Bronx, NY 10461
(718) 892-8588 • Fax (718) 518-0674

July 25, 2006

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ SEP 20 2006 ★

BROOKLYN OFFICE

Honorable Raymond J. Dearie
United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **_U.S. v. Venero Mangano_**
Docket No. 90-CR-446-4

Dear Judge Dearie:

As you recall, on March 26, 1993 you sentenced Venero Mangano to 188 months incarceration. Mr. Mangano appealed his conviction and filed several post-conviction motions. Although Judge Block decided Mr. Mangano's 2255 petition and, most recently, the Rule 60(b) application, we submit this letter to you since you were the sentencing Judge.[1]

In February, 2005 a letter was submitted to Your Honor following the United States Supreme Court's holding in _United States v. Booker_. Your Honor directed that the parties submit papers; which we did in the form of a Rule 60(b) application. Your Honor decided that the application should be forwarded to Judge Block since he presided over Mr. Mangano's 2255 petition. Before those turn of events, however, I delineated the medical conditions Mr. Mangano continues to contend with (See, minutes to March 22, 2005, proceeding attached herewith at pp. 4-6).

Mr. Mangano has been released to the Continental Services halfway house located at 988 Myrtle Avenue, Brooklyn, New York 11206. The conditions at the halfway house are not conducive to **Mr. Mangano's declining health.** I have placed numerous calls to BOP and "regional" to request that **Mr. Mangano be permitted to complete the remainder of his sentence in home confinement.** BOP has not responded to our request. I am thus asking Your Honor to intervene to the extent that you recommend to the Bureau of Prisons that Mr. Mangano be allowed to be released to home confinement.

As Your Honor is well aware, **Mr. Mangano is 84 years of age.** Since 1993 he has suffered a few heart attacks, which required three emergency operations. In addition, Mr. Mangano is virtually blind as he suffers from Macular degeneration. I believe that given

---

[1] A courtesy copy of this correspondence was also sent to Judge Block.

LAW OFFICES OF
# Murray Richman

his circumstances, Mr. Mangano is suited for home confinement. In fact, officials at Continental Services are in agreement that Mr. Mangano would be better served completing the remainder of his sentence under home confinement. While I understand that Your Honor cannot order the BOP to place Mr. Mangano directly in home confinement, you do have the authority to recommend it. See e.g. U.S.C. § 3624(c).

Mr. Mangano is an aged man with multiple health issues; the time he has remaining on this earth is short. His medical conditions existed long before he went to prison and have worsened over the years. **His prison sentence terminates in October, 2006.** If Your Honor does not intervene to the extent that you can, Mr. Mangano will have to remain at the Continental Services halfway house for two additional months. I have been told that a supervisor at Continental Services recognizes the importance of Mr. **Mangano serving the remainder of his sentence in home confinement.** Indeed, shortly after his arrival at Continental a representative from Continental Services was dispatched to Mr. Mangano's home to determine if it met the standards for home confinement. The only recommendation made to Mrs. Mangano was to have the "call waiting" feature removed from her phone. This was done immediately.

Predicated on the above, we therefore request your assistance, if you believe it warranted, in making said recommendation.

Thank you for your careful attention to this matter. I am available for a conference with Your Honor at your convenience.

Respectfully submitted,

Murray Richman, Esq.

MR/dt
Enc.

cc: Honorable Frederic Block
AUSA Peter Norling
AUSA Michael Warren

*[Handwritten note:]* THE APPLICATION IS GRANTED AND THE COURT RECOMMENDS TO THE BUREAU OF PRISONS THAT THE DFT. SPEND HIS LAST TWO MONTHS ON HOME DETENTION, RATHER THAN A HALF-WAY HOUSE. THE DFT. SHALL PAY THE COST ASSOCIATED WITH HOME CONFINEMENT. COUNSEL SHALL NOTIFY THE BUREAU OF PRISONS OF THIS RECOMMENDATION. SO ORDERED.

s/Frederic Block, USD
USDJ 9/19/06

```
                                                                    1

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
     - - - - - - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA,           :
                                         :    CR-90-446
                    v.                   :
                                         :    U.S. Courthouse
                                         :    Brooklyn, New York
     VENERO MANGANO,                     :
                                         :
                                         :
                    Defendant.           :
                                         :
                                         :
                                         :    March 22, 2005
                                         :    12:30 o'clock p.m.
                                         :
     - - - - - - - - - - - - - - - - - -X


                TRANSCRIPT OF STATUS CONFERENCE
            BEFORE THE HONORABLE RAYMOND J. DEARIE
                  UNITED STATES DISTRICT JUDGE

     APPEARANCES:

     For the Government:
                                 ROSLYNN R. MAUSKOPF
                                 United States Attorney
                            By:  PETER NORLING
                                 MICHAEL WARREN
                                 Assistants U.S. Attorney
                                 147 Pierrepont Street
                                 Brooklyn, New York 11201

     For the Defendant:          MURRAY RICHMAN, ESQ.


     Court Reporter:             Sheldon Silverman
                                 225 Cadman Plaza East
                                 Brooklyn, New York 11201

                                 (718) 260-2537

     Proceedings recorded by mechanical stenography, transcript
     produced by CAT.
```

                    SS, OCR, CSR, CM, CRR

2

1  THE CLERK: United States versus Mangano.
2  THE COURT: We are here following correspondence I
3  received from Mr. Richman by letter dated January 21st, then
4  in response to Mr. Norling by letter dated February 16th
5  concerning your request in contemplation of application
6  Mr. Richman has in mind for bail pending a filing of that
7  application.
8  MR. RICHMAN: That's correct.
9  THE COURT: The principal question, the initial
10 and perhaps principal question before me is where do I have
11 jurisdiction to even entertain you?
12 MR. RICHMAN: Under 60(b)(6) of the Federal Rules
13 of Civil Procedure you have such jurisdiction. This court
14 has discretionary power to revisit the sentencing issue under
15 Rule 60(b)(6). The U.S. Supreme Court has held a court may
16 exercise its discretionary power under Subsection 6 whenever
17 appropriate to accomplish justice. I can brief it more
18 fully. I have several cases in point on this particular
19 subject.
20      The Second Circuit calls for the provision under
21 60(b)(6) especially broad, being the Supreme Court's holding
22 in Klaprott versus the United States, 335 U.S. 601 and
23 appears at 615, 1949 case.
24 THE COURT: Congress provides these rather severe
25 limitations on the district court's power to consider

1  collateral applications or second collateral applications and
2  that can be -- I don't say this critically, bypassed by the
3  rule of 60(b).
4
5      MR. RICHMAN:  In the interest of justice, the
   court always has that opportunity.  The court sits --
6
7      THE COURT:  What case would you cite for that
   proposition?
8
9      MR. RICHMAN:  Ackerman, 340 U.S. 193, U.S. versus
   Cirami, 563 F.2d at page 26; U.S. versus Karahalas (ph), 205
10 F.2d.
11
12     THE COURT:  Do any of these cases involve what is
   accurately characterized in current parlance as a second
13 successive petition?
14     MR. RICHMAN:  They do not, sir.
15     THE COURT:  That's the problem.  You've got to get
16 me past that hurdle before I could even consider it.  In
17 other words, I have to have jurisdiction over the matter
18 before I can consider any relief.
19     MR. RICHMAN:  I recognize that, obviously.
20 I submit 60(b)(6) gives you such jurisdiction, the broad
21 opportunity to review this matter anew, especially in present
22 light under the set of circumstances, recognizing Booker, Fan
23 Fan is not retroactive.  It doesn't say the atmosphere in the
24 change, perception that we now have of the circumstances are
25 not retroactive.  Your view of the concept of that which

4

1  manifests justice can be applied under 60(b)(6) without
2  question. The court is given that, the legislature gives you
3  that to broaden that specter.
4         You sit here not only as a court of law but equity
5  as well. In doing so, you have a situation to do that which
6  manifests justice. These are words most of the time, lawyers
7  just ramble on about the words. Here, you have a chance, an
8  83 year old man has been in custody now a goodly number of
9  years, going on 12 years. Initially the guidelines suggested
10 he should have received 27 to 33 and the court gave a much
11 increased sentence.
12        He has had several heart attacks, going blind in
13 jail, numerous ailments covered is tremendous. He has a
14 release date of April of next year, but -- early release
15 date. It seems like you've done 12 years, what's another
16 year? That other year is whether he will come out being able
17 to see anything or not being able to see anything. I submit
18 our stage of life, you get a little older, there's a lot to
19 be said about seeing and doing.
20        THE COURT: You've got my attention now.
21        MR. RICHMAN: I thought you would listen. I'm
22 only suggesting here; one, I would like the opportunity to
23 brief this more fully; two, I would like to have bail set so
24 I could get him out temporarily, at least get the medical
25 attention he requires. He's going to be blind.

1  There's an interesting article yesterday in the New
2  York Times. It's on this issue of macrodegeneration.
3      THE COURT: I'm very familiar with it.
4      MR. RICHMAN: He's starting to loose sight.
5  Apparently, there is a method by treating it nowadays with
6  certain kinds of treatment. He's not going to get it in
7  prison, at least timely in prison. I'm not asking for
8  something unusual. I think it does go in the interest of
9  justice and if you give me three weeks to brief this subject,
10 give him bail pending that, we can deal with both subjects at
11 the same time.
12     THE COURT: Gentlemen?
13     MR. NORLING: We oppose it, your Honor. There has
14 yet to actually be a filing to put this whole matter before
15 the court; therefore, bail should not be granted. The BOP
16 has a number of prisoners who are similarly situated, can
17 deal with it.
18     I have no objection to another submission by
19 counsel for whatever it may be worth to convince the court it
20 has authority to act, but before we have that submission,
21 actual filing of petition, the court doesn't have
22 jurisdiction to set bail in this matter.
23     THE COURT: That's true. I have no matter pending
24 before me at the moment. I'm enormously sympathetic to the
25 family and to Mr. Mangano, his declining years. It's a very

6

1  unfortunate situation, but I've got to have jurisdiction to
2  act before I can even consider issuing bail. Indeed, it may
3  not be my issue to consider. It may have to be brought in
4  the first instance to the Second Circuit, but you've got to
5  get me past that hurdle, Mr. Richman, with all due respect,
6  before I'm even authorized to consider the question of bail.
7  If you do that, I'll be very happy to consider it and learn
8  more through your filing about his situation.
9        Where is he right now?
10       MR. RICHMAN: He's not in a medical facility,
11 Butner.
12       THE COURT: There's a medical facility there.
13       MR. RICHMAN: Not receiving medical attention.
14 It's not a medical facility per se. As such, he's
15 deteriorating very rapidly. I'm not sure his sight, at least
16 would not make it to April unless he's treated accordingly.
17       THE COURT: You understand my position. I have to
18 have authority to act before I could consider acting. As I
19 see it, I don't have that authority. If you have some case
20 law, you could do it informally by letter brief, file your
21 petition but I'll do anything I can to get the matter to a
22 head as quickly as possible, but I can't act until I believe
23 I have authority to act.
24       MR. RICHMAN: Thank you. I will do that, work on
25 that immediately.